IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BETH ANN SECRIST, )
 )
    PLAINTIFF, )
 )
V. ) No. 3:05-cv-182
 ) PHILLIPS/SHIRLEY
JEFF MELLOR, )
 )
    DEFENDANT. )

**MEMORANDUM AND OPINION**

The plaintiff initiated the instant lawsuit against her previous supervisor based on violation of 42 U.S.C. § 1983. Plaintiff claims that she was subjected to a hostile work environment based on gender discrimination that resulted in constructive discharge. The defendant has moved for summary judgment [Doc. 11] asserting that none of the alleged acts, perceived by plaintiff to have been wrongful, were based on her gender and that none of them remotely resemble violations of the Constitution. In addition, the defendant claims that he is entitled to qualified immunity from the plaintiff's claims. The plaintiff has responded in opposition, and the defendant has replied. For the reasons that follow, defendant's motion [Doc. 11] is **GRANTED**.

    **I.**    **Summary of the facts**

As the law requires, all disputed facts and inferences are resolved most favorably

1

for the plaintiff.  The Court merely provides an abridged summary of facts for the purposes of this opinion.

In 1993, plaintiff Beth Ann Secrist became the University's Director of the Language Resource Center ("LRC") in the Department of Modern Foreign Languages and Literature ("Department").  The LRC functions to support language instruction and research for the Department.  The LRC includes a computer lab and various audiovisual materials that may either be used in the LRC or checked out by faculty.  On July 1, 2002, the University implemented a new job classification and compensation system.  As a result, plaintiff's title changed from "Director" to "Coordinator II."  There was no impact to plaintiff's income.  Since plaintiff was dissatisfied with the change, she appealed her job classification in October of 2002.  Ultimately, plaintiff's title was elevated to "Coordinator III," and she received a pay increase of over $5,000 in March of 2004.  There is no evidence that Dr. Mellor had any role in plaintiff's job title or compensation.

In July of 2003, the University placed William Rhodes in the LCR as the first full-time Information Technology (IT) Administrator.  He had been employed by the University since 1987, was transferred from another department to the LCR, was to be supervised by Ms. Secrist, and was to continue to receive the same rate of pay as he received in his former position.[1]  Although plaintiff initially endorsed the arrival of Mr. Rhodes, she was troubled

---

[1] Mr. Rhodes' previous position was eliminated.  Under established university policy, an employee's salary is not reduced in transferring to another university position due to a loss of the original position through no fault of the employee.

2

that she, as the supervisor of Mr. Rhodes, received less compensation than Mr. Rhodes. In April of 2004, she notified the Director of the University's Office of Equity and Diversity that she still was "not satisfied with [her] job classification and compensation" and threatened to take "legal action" if the issues were not resolved.

In February of 2004, defendant Dr. Jeff Mellor, a professor of German language, became plaintiff's supervisor as the Interim Head of the Department. Ms. Secrist was under his supervision for approximately seven months before leaving her position of employment at the University, taking a similar position at the George Mason University in Virginia at a better rate of pay. During the seven months, plaintiff avers that Dr. Mellor's conduct and behavior made her working conditions so intolerable that a reasonable person would have felt compelled to resign.[2] Plaintiff relates a handful of incidents/issues to establish a hostile work environment created by Dr. Mellor, to which she was subjected.

For instance, Dr. Mellor implemented a change of the audiovisual lending policy for the faculty. Under the old policy, the faculty were to submit requests by 3:00 p.m. for equipment needed the following day. Ms. Secrist stated that this reservation policy allowed her more time to continue in performing "higher level information technology tasks," as she would not be interrupted from her work to retrieve equipment. Under the new policy, the staff of the LCR, including the plaintiff, would be required to take equipment requests of the

---

[2]Ms. Secrist also filed suit against the University on June 1, 2004 in Knox County Chancery Court alleging that the University had discriminated against her because of her gender by paying her less than male counterparts in violation of the Tennessee Human Rights Act. The Chancery Court matter does not involve Dr. Mellor. The case was still pending as of the reactivation of the defendant's motion for summary judgment.

faculty without a reservation.  Dr. Mellor asserts that this more flexible policy better served the faculty as the old policy was unduly restrictive.  However, plaintiff perceived this change in policy to be Dr. Mellor's intentional indirect act to force her to perform more menial tasks.  The record reflects dialogue and acts of both accommodation and opposition between the parties regarding the equipment lending policy.  Ultimately, Dr. Mellor directed Ms. Secrist to implement the revised policy, saying that he welcomed input prior to the formation of the policy, but that once the policy had been formulated he expected it to be carried out.

Also, Ms. Secrist alleges that Dr. Mellor planned to oust her from her position as the LRC Coordinator, upgrade the position to a faculty position (requiring a Ph.D, which Ms. Secrist did not possess), and then fill it with the husband of another faculty member, Dr. Bernard Martin.  However, the record reflects that Dr. Mellor proposed to upgrade the position after plaintiff's resignation.  In response, Ms. Secrist asserts that Dr. Mellor voiced his objective to create a position for Dr. Martin before Dr. Mellor was appointed to Interim Head of the Department.  Regardless, Dr. Martin was not selected for the appointment, although he did possess the appropriate experience and credentials and had applied for the position.  Moreover, the University did not fund Dr. Mellor's proposal to upgrade the LRC Coordinator position.  Rather, the proposal was abandoned.  In November of 2004, a woman was selected for the position that plaintiff had vacated.  Plaintiff states that the woman was thereafter fired.  However, defendant states that since plaintiff resigned from her position on short notice, just after the beginning of a new academic year, the replacement was hired on a purely temporary appointment, as plaintiff herself and other

4

witnesses on behalf of the plaintiff had testified.

Plaintiff further contends that Dr. Mellor's use of a faculty survey about staff performance was discriminatory. Dr. Mellor states that he wanted input from the faculty as to how the staff was generally perceived, how well the department was functioning in all of its activities, and what, if any, improvements could be sought. The survey was for the entire teaching faculty in regard to each staff member, both male and female, and both in the main office and in the LRC. The results were compiled by Dr. Mellor and discussed privately with each staff member. The results were not placed in personnel files, were not made public, and were not retained. As to Ms. Secrist, Dr. Mellor called attention to matters of concern or dissatisfaction among the teaching faculty with respect to her performance. For reason, Dr. Mellor contends that if a staff member received negative evaluations arising from teaching staff numbering over 100, the particular individual showed patterns of dissatisfaction. Accordingly, Dr. Mellor believed that such staff members, including Ms. Secrist, would have wanted to be aware of such concerns.

Additionally, plaintiff states that, in contrast to Dr. Mellor's demeaning treatment toward her, he showed great deference and respect toward Mr. Rhodes. Further, plaintiff argues that Dr. Mellor would meet privately with Mr. Rhodes to discuss technological planning for the LCR. Ms. Secrist asserts that Dr. Mellor's impression was that she "had a lot of technical knowledge but not enough to stand in for Mr. Rhodes or do the kind of things that 'really only he can do.'" Ms. Secrist states that if Mr. Rhodes had not been

available in 2003, she could have handled the new technology needs going forward. Plaintiff also alludes to an incident in which she was testing some audio files while wearing headphones. Plaintiff was upset when Dr. Mellor assumed that she was listening to music and not working. Plaintiff believes that Dr. Mellor would not have articulated the same assumption about her male assistants.

Besides the above issues and instances, Ms. Secrist relates extensive details about her relationship with her former supervisor, Dr. Carolyn Hodges; discusses her years of technical experience before 2004; and articulates comments from two technical consultants' reports indicating that she should be utilized in handling complex technological matters, rather than perform clerical work. In reply, Dr. Mellor states that none of the above has anything to do with gender discrimination.

Plaintiff also puts forth testimony from Dr. Dolly Young, a professor in the Modern Foreign Language Department and an Associate Head of the Department, in support of her claims. Dr. Young felt that Dr. Mellor spoke to his female secretary in a demeaning manner. In reference to Ms. Secrist, Dr. Young would talk to Dr. Mellor to attempt to underscore Ms. Secrist's value, as well as articulate the numerous matters that Ms. Secrist was handling. Although Dr. Young felt Dr. Mellor did not take her endorsements of Ms. Secrist seriously, she states that Dr. Mellor was not "dismissive" of her arguments. Also, Dr. Young states that she did not observe Dr. Mellor and Ms. Secrist personally interact. Further, Dr. Young could not say whether Dr. Mellor treated Ms. Secrist any differently

because she was a woman.

Additionally, Ms. Secrist offers the testimony of Dr. Hodges to support her claims. Besides asserting Ms. Secrist's beneficial and valuable traits, Dr. Hodges states that she supported Ms. Secrist in the equipment lending policy. Dr. Hodges also attests to conversations that she had with Dr. Mellor regarding the equipment reservation policy. She recalls that Dr. Mellor expressed that the "service to the faculty when they needed it was of utmost importance to him." Further, Dr. Hodges stated that she did not believe that the plaintiff's status was diminished but that the change in policy "impacted her ability to do what she did well."

**II.     Law applicable to Rule 56 of the Federal Rules of Civil Procedure**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence, which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir.1996).

### III.  Motion for summary judgment and applicable law

The plaintiff has filed this action against Dr. Mellor individually under 42 U.S.C. § 1983 claiming that Dr. Mellor subjected her to a hostile or abusive work environment based upon gender in violation of her Fourteenth Amendment right to equal protection of the law.[3] Title 42 U.S.C. § 1983 is a statute that allows recovery for constitutional violations caused by an official acting under the color of state law. In the Sixth Circuit, claims under 42 U.S.C. § 1983 require the same standard of proof to establish a prima facie case as a Title VII claim. *Newman v. Federal Express Corp.,* 266 F.3d 401, 406 (6th Cir. 2001); *Smith v. City of Salem,* 378 F.3d 566, 576 (6th Cir. 2004); *William v. Gen. Motors Corp.,* 187 F.3d 553, 560 & n. 2 (6th Cir. 1999); *Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir. 1988)

---

[3] Sexual harassment by a government official violates the Equal Protection Clause. *Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir. 1988).

("[T]he showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983."). Further, a plaintiff may establish a violation of Title VII, without having to prove a tangible employment action, by proving that sex-based discrimination created a hostile or abusive working environment. See *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66, (1986); *Williams v. General Motors Corp.*, 187 F.3d 553, 560 (6th Cir.1999).

To state a claim of sexual harassment based upon a hostile work environment created by a supervisor, a plaintiff suing under § 1983 must allege facts that are sufficient to establish the following four elements: (1) she was a member of a protected class; (2) she was subjected to unwelcomed sexual harassment; (3) the harassment was based on her sex; (4) and the harassment had the effect of unreasonably interfering with plaintiff's work performance by creating an intimidating, hostile, or offensive work environment. *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 463 (6th Cir. 2000); *see also Hickman v. Laskodi*, 45 Fed.Appx. 451, 453-54 (6th Cir. 2002).

A hostile work environment occurs "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems v. Inc.,* 510 U.S. 17, 21 (1993). In determining whether there was a hostile work environment, courts look to the "totality of the circumstances." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998). "The conduct must be severe enough

or pervasive enough to create an environment that a reasonable person would find hostile or abusive." *Bowman,* 220 F.3d at 463.

Appropriate factors for the Court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris,* 510 U.S. at 23). In cases alleging sexual harassment, typically the alleged harassing behavior "must contain gender derogatory language to be actionable." *Wiseman v. Whayne Supply Co.*, 359 F.Supp.2d 579, 586 (W.D.Ky. 2004). If the alleged discriminatory conduct is non-sexual, as in the instant matter, the conduct must at least "evidence anti-female animus." *Duggins v. Steak 'N Shake*, 3 Fed. Appx. 302, 310 (6th Cir. 2001). The Supreme Court has consistently held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Newman,* 266 F.3d at 405 (quoting *Faragher,* 524 U.S. at 788).

In the case at bar, Ms. Secrist has not offered sufficient evidence to establish that she was subjected to a hostile work environment with respect to the actions of Dr. Mellor. The inferences to be drawn from the evidence, viewed in the light most favorable to the plaintiff, do not establish genuine issues of material fact. Dr. Mellor was the supervisor of Ms. Secrist. He exercised his authority to change the policy with respect to the audio visual

equipment check out. The person now serving in plaintiff's position, who is a male, checks out the audiovisual equipment to faculty who come into the LRC without reservation. Dr. Mellor simply believed that the faculty would be better served by not requiring reservation of the equipment. Further, Dr. Hodges, a witness for the plaintiff, stated that she did not believe that the plaintiff's status was diminished but that the change in policy only "impacted her ability to do what she did well."

As to allegations that Dr. Mellor planned to oust her from her position as the LRC Coordinator, the record reflects that Dr. Mellor did not propose to upgrade the position until after plaintiff resigned; that the male candidate Dr. Mellor allegedly favored for the LRC position was never offered the position; and that the proposal to upgrade the position was abandoned.

As to allegations concerning the faculty survey of staff performance at the LCR, the survey was for the entire teaching faculty in regard to each staff member, both male and female, and both in the main office and in the LRC. The results were complied by Dr. Mellor and discussed privately with each staff member. The results were not placed in personnel files, were not made public, and were not retained. The plaintiff has simply failed to established that the survey was unequally applied and that the use and results of the survey were utilized in a discriminatory manner. It would appear that the survey was a tool for management and for the betterment of services provided by the LCR.

11

As to Dr. Mellor's deference toward Mr. Rhodes, although Mr. Rhodes is a male, the fact that Dr. Mellor would confer with Mr. Rhodes without more evidence of gender discrimination than what has been asserted in the instant matter is not enough to evince discrimination based upon sex. It appears that Mr. Rhodes has some technical knowledge, which is of value to both Ms. Secrist and Dr. Mellor. Also, although the plaintiff was upset that Dr. Mellor assumed that she was listening to music and not working, it is merely Ms. Secrist's conjecture that Dr. Mellor would not have articulated the same assumption about her male assistants.

Additionally, although plaintiff relates extensive details about her relationship with her former supervisor, her years of technical experience before 2004, two technical consultants' reports from 2002, and events that occurred after she resigned from her position with the University of Tennessee, none of these facts are relevant.

Plaintiff, at most, has alleged personal differences and professional disagreements between her and Dr. Mellor. There is no evidence that any of these perceived slights were motivated by plaintiff's gender. Further, plaintiff's own evidence demonstrates the lack of discriminatory animus. As Dr. Young stated, "I can not say whether it was a male or female thing ... whether it was based on gender, I cannot say." Also, as Dr. Hodges stated, Dr. Mellor's decision to change the check out policy was motivated by faculty needs as the "service to faculty when they needed it was the utmost importance to him."

In summation, this Court finds that as a matter of law a jury would not hold Dr. Mellor liable for plaintiff's alleged damages arising from the disagreements and interactions between Dr. Mellor and Ms. Secrist. Accordingly, defendant's motion fails in that it has no basis in fact and law.[4]

## IV. Conclusion

For the reasons hereinabove set forth, defendant's motion for summary judgment [Doc. 11] is **GRANTED in its entirety**.

**IT IS SO ORDERED.**

                                      **ENTER:**

                                      s/Thomas W. Phillips
                                      UNITED STATES DISTRICT JUDGE

---

[4] Ms. Secrist states that Dr. Mellor's behavior toward her was so severe as to constitute a constructive discharge. As the Court has found that there is not sufficient evidence of a hostile work environment, there is no need to address plaintiff's contentions of constructive discharge. *See Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) (Where a plaintiff claims constructive discharge in a sexual harassment/hostile work environment case, he or she must prove something beyond sexual harassment.). Further, since the Court has not found a constitutional violation, there is no need to address Dr. Mellor's defense of qualified immunity.